ANNA FRITZ, ADMINISTRATRIX, v. SAYRE & FISHER
COMPANY.

Argued November 10, 1908—Decided February 23, 1909.

A verdict which cannot be supported upon the theory of law on which
the case was submitted to the jury must be set aside.

On defendant's rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices SWAYZE
and TRENCHARD.

For the rule, *Alan H. Strong.*

*Contra, George S. Silzer.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. This action was brought by the
administratrix of Michael Fritz to recover for his death. He
lost his life through the falling of a brick kiln which he and
other employes were engaged in constructing for the de-
fendant company. The kiln upon which he was engaged at
the time it collapsed was a rectangular structure of brick
ninety-six feet long by twenty-five feet wide. The side walls
were about eight feet high and were surmounted by a crown
or arch making an additional height of eight and one-half feet
to the highest part of the arch. The mason's gang, of which
Fritz was a member, was erecting the arch over half of the
length of ninety-six feet, and had completed it with the ex-
ception of eight or ten keys, which remained to be placed at
the top. Fritz and his fellow-workmen were engaged in put-
ting in these remaining keys, when the entire crown col-
lapsed, leaving the side walls standing.

In each of the side walls of the kiln, every six feet through-
out their entire length, were built eight-inch I beams in
pairs, three inches apart, which projected above the top of

the walls.   Iron plates were bolted to each pair of I beams at their exposed ends, and through these plates were holes for the purpose of receiving tie-rods designed to connect each pair of I beams with the pair directly opposite to it on the other side of the kiln.   At the time of the accident only three of these tie-rods had been put in place, one at each end of that half of the kiln upon which the crown was being constructed, and a third at an intermediate point.   The theory of the plaintiff was that the fall of the arch was due to the springing out of the side walls occasioned by the other tie-rods not being in position, and that the defendant was chargeable with their omission.

The trial resulted in a verdict for $5,800 in favor of the plaintiff.

Numerous reasons are assigned on the part of the defendant for the setting aside of this verdict.   Only one of them, however, requires consideration at this time, and that is that "the verdict is contrary to the judge's charge."   Among other matters contained in the charge was the following instruction, delivered at the request of defendant's counsel: "If the defendant supplied tie-rods sufficient for the purpose, it is not responsible for the failure to use them before building the crown."   The soundness of this instruction, as a legal proposition, is not open to us for consideration, for the verdict can only be sustained on the assumption that it is a correct exposition of the law of the case.   It is entirely settled that a verdict cannot be supported upon a theory of the law contrary to that on which the case was submitted to the jury.   *Hays* v. *Pennsylvania Railroad Co.,* 13 *Vroom* 446; *Marts* v. *Cumberland Insurance Co.,* 15 *Id.* 478; *Halsey* v. *Lehigh Valley Railroad Co.,* 16 *Id.* 26; *Sensfelder* v. *Stokes,* 40 *Id.* 86; *Oakley* v. *Emmons,* 44 *Id.* 206.   The finding of the jury in favor of the plaintiff, therefore, must be accepted as determining that the defendant company failed to supply tie-rods sufficient in number to lock the various I beams which had been built into the walls.   Will the proofs submitted to them support such a finding?

On the part of the plaintiff two witnesses were examined

upon this point, Werner and Koehler. Werner testified on his direct examination that there were no tie-rods anywhere around where the work was going on, except the three which were in place in the kiln. On the cross-examination he stated that by "around where the work was going on" he meant either on the kiln itself, or within ten feet of it, and, when asked whether there might not have been rods there outside of the ten feet radius, answered, "I had no business to look after them." This is the whole of his testimony upon that point. Koehler's examination in full upon the point is as follows:

"Direct examination.

"*Q.* Before the kiln went down were there any tie-rods anywhere around that work, or this kiln, except these three?

"*A.* I couldn't see it, only these three.

"*Q.* Were there any around that work at all where you were at this kiln?

"*A.* No, not around the kiln.

"Cross-examination.

"*Q.* What do you mean by 'around the work?'

"*A.* I mean all around the place.

"*Q.* In what place?

"*A.* Where we were working.

"*Q.* How far away do you mean?

"*A.* About fifty feet away—or ten or twenty feet—on one side it was about twenty feet and on the other side it was about seven feet.

"*Q.* That is all you know—it was not within that space?

"*A.* No."

On the part of the defendant three witnesses, Peterson, who was in charge of the mason work, including the setting of the I beams and the placing of the tie-rods; Lund, the foreman in charge of the carpenter work, and McCarthy, the designer of the kiln, testified that tie-rods had been supplied for use in locking the I beams, and that they were stored in a shed about fifty to seventy-five feet from the kiln, at the time the accident occurred. In addition to the proof by these witnesses, Mr. Fisher, the general manager of the de-

fendant company, testified that the tie-rods for this particular kiln had been ordered from Philadelphia, had been delivered at the company's plant, and had been placed in their supply room which was located about a thousand feet from the spot where the kiln was being built, and that they were there subject to the call of Peterson, to be used at such time as his judgment dictated. How, upon this testimony, the jury could have concluded that the defendant had failed to furnish a sufficient number of tie-rods for the kiln, it is difficult to understand. No attempt was made to impeach the credibility of any one of the defendant's witnesses, and their testimony is not at all in conflict with that given by the witnesses called by the plaintiff. The finding of the jury is not only contrary to the preponderance of the evidence, but is entirely unsupported by the proofs.

The rule to show cause will be made absolute.